**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | |
|---|---|
| Tabitha Jordan, individually and on behalf of all others similarly situated, | 3:23-cv-03212 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Ricola USA, Inc., | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1. Ricola USA, Inc. ("Defendant") manufactures, labels, markets, and sells original and mixed berry cough suppressant and oral anesthetic lozenges "Made With Swiss Alpine Herbs" under the Ricola brand ("Products").

 

2. Other relevant representations include "Effective Relief" and pictures of the Swiss Alpine Herbs of peppermint, elder, wild thyme, horehound, hyssop, mallow, sage, linden flowers, lemon balm and thyme ("Original Herb") and of peppermint, sage, linden flowers, lemon balm, thyme, mallow and hyssop ("Berry Medley").

3. The Original Herb lozenge is amber while the Berry Medley is reddish-purple.

## I. HERBAL PRODUCTS MARKET

4. The past thirty years has seen a steep increase in consumer consumption and usage of products containing herbal extracts.

5. During this time, eighty percent of adults have used over-the-counter ("OTC") drug products containing herbal ingredients at some point for their healthcare needs over pharmaceutical alternatives.

6. According to Mintel, the herbal remedies market is over $10 billion per year and growing at over four percent per year.

7. Almost half of Americans report using herbal remedies in the prior twelve months.

8. Sixty-five percent of younger parents regularly select products with herbal ingredients for themselves and their children.

9. This has caused the pharmaceutical industry to investigate more ways to use herbal ingredients in OTC products.

10. Herbal ingredients are increasingly incorporated into OTC categories, including external pain relieving rubs, cough suppressants, muscle relaxants, digestive aids, and oral care.

11. Herbal products are used by consumers to address the same issues traditional OTC products are, including common colds, coughs, muscle soreness and aches, sleep issues, and stress.

## II. REASONS FOR INCREASE IN DEMAND FOR HERBAL PRODUCTS

12. The reasons for increased usage of herbal products are several.

13. First, numerous consumers are better able to tolerate products based on herbal ingredients than synthetic ones.

14. Second, the resurgence in popularity of alternative medicine systems like Ayurveda, which rely heavily on herbal ingredients, has made consumers seek out products made with similar ingredients.

15. Third, a growing number of consumers believe that the American medical and pharmaceutical system overuse traditional medications and seek to reduce their usage of standard prescriptions.

16. Fourth, many consumers believe that herbal ingredients are more potent and less harmful than man-made ingredients.

17. The Coronavirus pandemic further increased consumer adoption of products containing herbal ingredients as another layer of protection from this disease.

## III. REPRESENTATIONS THAT EFFECTIVENESS IS DUE TO HERBAL INGREDIENTS IS MISLEADING

18. Despite the front label representations including "Cough Suppressant" and "Oral Anesthetic" (Original Herb), "Oral Anesthetic" (Berry Medley), "Effective Relief," "Made With Swiss Alpine Herbs," and pictures of ten herbs (Original) and seven herbs (Berry), the Products' therapeutic effects are not provided by any of the herbs pictured on the front labels.

19. This is shown through a review of the Drug Facts on the back labels, which identify menthol as the only active ingredient.

3

*Active Ingredient* (in each drop)
Menthol, 4.8 mg

*Inactive Ingredients* color (caramel), extract of a Ricola herb mixture (elder, horehound, hyssop, lemon balm, linden flowers, mallow, peppermint, sage, thyme, wild thyme), natural flavor, starch syrup, sugar

*Active Ingredient* (in each drop)
Menthol, 1.7 mg

*Inactive Ingredients* bilberry juice concentrate, black currant juice concentrate, citric acid, extract of Ricola herb mixture (lemon balm, peppermint, thyme, hyssop, sage, elder, linden, mallow, horehound, wild thyme), glucose syrup, natural color, natural flavors, peppermint oil, raspberry juice concentrate, sugar

20. An active ingredient means any component intended to provide a pharmacological or direct effect in the mitigation or treatment of any condition. 21 C.F.R. § 210.3(b)(7).

4

21. However, the herbs promoted on the front label are exclusively "Inactive Ingredients."

22. Inactive ingredients are defined as any component other than active ingredients. 21 C.F.R. § 210.3(b)(8).

23. Consumers seeing the Products' front label will expect their cough suppressant and oral anesthetic functionality will be provided by its herbal ingredients.

24. It is false, deceptive and misleading to claim or imply that the Products' inactive ingredients provide a therapeutic benefit.

25. Competitor products contain substantially similar ingredients to the Products.

26. However, only Defendant's Products convey the message that its herbal ingredients are responsible for their cough suppressant and oral anesthetic properties they provide.

27. Competitor herbal lozenges from Meijer, Target, Dollar General, and Walmart, do not represent to consumers that their herbal ingredients are responsible for its therapeutic effects, by disclosing the presence of menthol on their front labels, i.e., "4.8 mg Menthol Per Drop" and "Menthol Cough Suppressant."






## IV.   CONCLUSION

28.   Defendant makes other representations and omissions with respect to the Products which are false and misleading.

29.   Reasonable consumers must and do rely on a company to honestly and lawfully market and describe the components, attributes, and features of products, relative to themselves

6

and other comparable products or alternatives.

30. The value of the Products that Plaintiff purchased was materially less than its value as represented by Defendant.

31. Defendant sold more of the Products and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

32. Had Plaintiff and proposed class members known the truth, they would not have bought the Products or would have paid less for it.

33. As a result of the false and misleading representations, the Products are sold at a premium price, approximately no less than no less than $3.99 per 21 lozenges (Original Herb) and $3.39 per 19 lozenges (Berry Medley), excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

Jurisdiction and Venue

34. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

35. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

36. Plaintiff Tabitha Jordan is a citizen of Illinois.

37. Defendant Ricola USA, Inc. is a New Jersey corporation with a principal place of business in Parsippany, Morris County, New Jersey.

38. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen

39. The members of the class Plaintiff seeks to represent are more than 100, because the

Products have been sold with the representations described here, in thousands of locations, in this State.

40. The Products are available to consumers from grocery stores, dollar stores, warehouse club stores, drug stores, convenience stores, big box stores, and online.

41. Venue is in the Springfield Division in this District because a substantial part of the events or omissions giving rise to these claims occurred in Adams County, including Plaintiff's purchase, consumption, and/or use of the Products and awareness and/or experiences of and with the issues described here.

## Parties

42. Plaintiff Tabitha Jordan is a citizen of Quincy, Adams County, Illinois.

43. Defendant Ricola USA, Inc. is a New Jersey corporation with a principal place of business in Parsippany, New Jersey, Morris County.

44. Ricola was founded almost a hundred years ago in the shadow of the Swiss Alps.

45. The original Ricola lozenge was a potent therapeutic combination of Swiss herbs that was developed based on centuries of local knowledge, passed down orally through the rural mountainside communities.

46. For many decades, the Ricola lozenges were able to provide therapeutic benefits based on its unique blend of Swiss Alpine herbs.

47. In October 2021, Ricola revealed the results of its strategic review of its branding and marketing.

48. The result was the claim that its products are "Made With Swiss Alpine Herbs."

49. The Products are available to consumers from grocery stores, dollar stores, warehouse club stores, drug stores, convenience stores, big box stores, and online.

50. Plaintiff purchased the Original Herb and/or the Berry Medley on one or more occasions within the statutes of limitations for each cause of action alleged, at stores including Walgreens and/or Walmart, in Quincy, in 2022 and/or among other times.

51. Plaintiff believed and expected the Products functioned as a cough suppressant and oral anesthetic (Original Herb) and oral anesthetic (Berry Medley) due to the presence of herbal ingredients because that is what the representations and omissions said and implied, on the front label and the absence of any reference or statement elsewhere on the Products.

52. Plaintiff seeks to purchase OTC and other products which contain herbal ingredients that contribute to those products' functionality.

53. Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging and/or images on the Products, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Products and separately, through in-store, digital, audio, and print marketing.

54. Plaintiff bought the Products at or exceeding the above-referenced price.

55. Plaintiff would not have purchased the Products if she knew the representations and omissions were false and misleading or would have paid less for it.

56. Plaintiff chose between Defendant's Products and products represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components.

57. The Products were worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

58. Plaintiff intends to, seeks to, and will purchase the Products again when she can do

so with the assurance the Products' representations are consistent with its abilities, attributes, and/or composition.

59. Plaintiff is unable to rely on the labeling and representations not only of these Products, but other similar OTC and other products promoted as made with herbal ingredients, because she is unsure whether those representations are truthful.

## Class Allegations

60. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following class:

> **Illinois Class:** All persons in the State of Illinois who purchased the Products during the statutes of limitations for each cause of action alleged.

61. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

62. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

63. Plaintiff is an adequate representative because her interests do not conflict with other members.

64. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

65. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

66. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

67. Plaintiff seeks class-wide injunctive relief because the practices continue.

### Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, et seq.

68. Plaintiff incorporates by reference all preceding paragraphs.

69. Plaintiff believed the Products functioned as a cough suppressant and oral anesthetic and as an oral anesthetic due to the presence of herbal ingredients.

70. Defendant's false, misleading and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

71. Defendant misrepresented the Products through statements, omissions, ambiguities, half-truths and/or actions.

72. Plaintiff relied on the representations and omissions to believe the Products functioned as a cough suppressant and oral anesthetic and as an oral anesthetic due to the presence of herbal ingredients.

73. Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

### Unjust Enrichment

74. Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

11

2. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

3. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

4. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

5. Other and further relief as the Court deems just and proper.

Dated: June 19, 2023

Respectfully submitted,

/s/Spencer Sheehan
Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com